MOSELEY'S ADM'R. *vs.* MASTIN.

[DETINUE FOR SLAVES.]

1. *Validity of grant of administration.*—A grant of letters of administration in chief, when there has been in fact a previous administration, which had terminated by the death of the administrator, (these facts not appearing in the second grant,) is valid as a grant of administration *de bonis non*, and void only as to the excess of authority which it purports to confer.

2. *Judicial notice of meaning of words.*—The appellate court will take judicial notice of the fact, that the word "*adm'r*," following the plaintiff's name in the complaint, is an abbreviation for the word *administrator*.

3. *Admissibility of parol evidence in aid of record.*—A grant of letters of administration on the estate of E. M., deceased, when it appears that there were two persons (father and son) of that name, each leaving an estate in the county to be administered, may be shown by parol to refer to the estate of the son.

4. *Presumption of injury from error.*—If evidence is erroneously excluded by the primary court, on a single specified ground, the appellate court will presume injury from the error, although it appears that the evidence was, *prima facie*, inadmissible on another ground, which, if the objection had there been raised, might have been obviated by the introduction of other evidence.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. S. D. HALE.

THIS action was brought by Joseph D. Hopper, as the administrator of Elisha Moseley, junior, deceased, against Peter B. Mastin. In the summons, the plaintiff was described as the administrator of Elisha Moseley, jr., deceased ; in the marginal statement of the parties' names in the complaint, "as *adm'r* of Elisha Moseley, jr., deceased ;" and in the body of the complaint, "as *adm'r* of all goods and chattels, rights and credits of Elisha Moseley, jr., deceased, which were left unadministered by the administrator in chief." The slaves in controversy belonged to Elisha Moseley, senior, who was the father of plaintiff's intestate, and were given by him to his said son, on the marriage of the latter, in 1836, or 1837. The son carried the slaves

home with him when he commenced house-keeping, and
kept them until his death, which occurred about twelve
months afterwards. On the death of the son, the father
carried his wife and the slaves to his own house, declaring
his intention to keep the slaves for the child with which
his daughter-in-law was then pregnant. Letters of admin-
istration on the estate of the son were granted to the father
on the 2d March, 1838, but he did not include the slaves
in his inventory of the estate; and in January, 1840, on
settlement of his accounts, a decree was rendered against
him, in favor of the intestate's wife and child, for the bal-
ance of money ascertained to be in his hands, but he was
not discharged from the trust. The father died in 1843;
and the slaves were afterwards sold by his administrator,
under an order of court, and were purchased at the sale by
the defendant. The father and son both lived and died in
Montgomery county, Alabama, and letters of administration
were there granted on their respective estates.

After having proved the facts above stated, the plaintiff
offered to read in evidence his letters of administration,
which were granted by the probate court of Montgomery,
on the 6th August, 1856, and which were in the following
words: "This day came Joseph D. Hopper, and applied for
letters of administration on the estate of Elisha Moseley,
deceased; and it appearing to the court that the deceased
has been dead more than forty days, and that he died in
Montgomery county, Alabama; and the said Joseph D.
Hopper having entered into bond, in the sum of six thou-
sand dollars, with J. F. Jackson and Thomas H. Watts as
his sureties, and taken the oath of office, it is ordered, that
letters of administration issue to Joseph D. Hopper on the
estate of Elisha Moseley, deceased; and ordered, that said
administrator make return of an inventory to the court in
sixty days.'" "The plaintiff stated, that he expected to
prove, in connection with said order, that he had duly
qualified as such administrator, pursuant to said order, and
was acting as such under it at the commencement of this
suit. The defendant objected to the reading of said order.

in evidence, on the ground that, on the facts hereinabove-stated, said order was null and void; and on the further ground, that there was a variance between the complaint and said evidence, because the order showed that he was appointed administrator generally, while he sued as administrator *de bonis non.*" The court sustained the objections, and excluded the evidence; to which the plaintiff excepted, and took a nonsuit; and he now assigns this ruling of the court as error.

WATTS, JUDGE & JACKSON, for appellant.—The grant of administration to the plaintiff was not void.—*Ikelheimer v. Chapman's Adm'r*, 32 Ala. 676; *Savage v. Benham*, 17 Ala. 119; *Herbert v. Hanrick*, 16 Ala. 581; *Speight v. Knight*, 11 Ala. 461. The entire record of the administration on the estate, taken together, shows that the grant could not be an administration in chief, but could only operate as an administration *de bonis non*; and as such it must be considered, since it is not void. Hence, the plaintiff was properly described as administrator *de bonis non*, and there was no variance.

GOLDTHWAITE, RICE & SEMPLE, *contra.*—The rights and liabilities of an administrator in chief are different from those of an administrator *de bonis non.*—*Enicks v. Powell*, 2 Strob. Eq. 196. The title of an administrator in chief relates back to the death of the intestate, while the title of an administrator *de bonis non* reaches only to the assets which were not administered by his predecessor; and defenses may sometimes be made against the one, which would not avail against the other.—*Judge, &c. v. Price*, 6 Ala. 36; *Fambro v. Gantt*, 12 Ala. 298. The difference between these two kinds of administration constitutes a fatal variance between the allegations and proof in this case. *Scott v. Dansby*, 12 Ala. 714; *Flake & Freeman v. Day*, 22 Ala. 132; *Agee v. Williams*, 27 Ala. 644; *Dill v. Rather*, 30 Ala. 57.

A. J. WALKER, C. J.—The grant of administration to

the appellant was not void, on account of the omission of a recital of the facts upon which the jurisdiction of the court was predicated.—*Ikelheimer v. Chapman*, 32 Ala. 676; *Savage v. Benham*, 17 Ala. 119. As there had been a previous administration upon the estate, which was terminated by the administrator's death, there could not be an administration in chief, and it was improper for the court to appoint an administrator generally. The appointment should have been in terms restricted to the character of an administrator *de bonis non*. But we do not think the appointment ought therefore to have been held void *in toto*. The authority of an administrator *de bonis non* is precisely that of an administrator in chief, lessened in consequence of the previous administration; and the error of the court, in omitting to properly qualify the grant of administration, had only the effect of conveying an excess of power; and the grant of administration should be held void only for the excess of authority. A consideration of the appointment, in connection with the previous administration, shown by the records of the court, qualifies it, and gives it the character of an administration *de bonis non*. The plaintiff was, therefore, properly described as administrator *de bonis non;* and the apparent variance between the character in which he sues, and that bestowed by the grant of administration, is harmonized and reconciled by the facts, that there had been a previous administration, which was terminated by death.—See *Steene v. Bennet & Sergeant*, 24 Verm. 303; and *Grand v. Herrera*, 15 Texas, 533, which seem to be precisely in point, sustaining the foregoing views.

Judgment reversed, and cause remanded.

Note by Reporter.—The appellee's counsel afterwards submitted a petition for a rehearing, in which they urged an affirmance of the judgment of the circuit court, on the following grounds:

1. As the plaintiff never had possession of the slaves, he cannot recover in his individual character.—*George v.*

*English*, 30 Ala. 583. Looking to the body of the complaint, the only words descriptive of his representative character are, "as *adm'r* of all the goods and chattels," &c., "left unadministered by the administrator in chief;" and since nothing is averred to excuse the profert and proof of his representative character, (*Worthington v. McRoberts*, 7 Ala. 814,) and the defendant is not estopped from denying it, (*Harbin v. Levi*, 6 Ala. 399;) this court will not presume, against the judgment of the circuit court, that these words indicate a suit by him as administrator.—*Chapman v. Spence*, 22 Ala. 588. No intendments are to be made in favor of the pleader, and against the correctness of the judgment.—*King v Griffin*, 6 Ala. 387 ; *Agee v. Williams*, 27 Ala. 644 ; *S. C.*, 30 Ala. 636 ; *George v. English*, 30 Ala. 583.

2. But, if the action is brought by the plaintiff in his representative character, the order of the probate court was properly excluded. A grant of letters of administration on the estate of " Elisha Moseley, deceased," without any other addition or description of the person; when it is shown that there were two deceased persons, father and son, each bearing that name, and each leaving an estate in the county, must be construed and held as a grant of administration on the estate of the father.—*Wilson v. Stubs*, Hobart, 330 ; *Lepiot v. Browne*, 1 Salkeld, 7, pl. 16 ; *Sweeting v. Fowler*, 1 Starkie, 106 ; *Boyden v. Hastings*, 17 Pick. 200. The construction of the order of the probate court was a question for the determination of the court, and with which the jury had nothing to do.— *Wyatt v. Steele*, 26 Ala. 639 ; *Bishop v. Hampton*, 15 Ala. 761 ; *S. C.*, 19 Ala. 792. Parol evidence was not admissible to change the legal effect of the grant, by showing that it was intended to refer to the estate of the son.—*Hudson v. Gayle*, 10 Ala. 116 ; *Flournoy v: Mims*, 17 Ala. 36 ; *Ware v. Roberson*, 18 Ala. 105. No such evidence was offered by plaintiff, even if it were admissible ; and this court will not presume, for the purpose of reversing the judgment, that the plaintiff could have made the necessary proof.

Moseley's Adm'r v. Mastin.

In response to this application, the following opinion was, on a subsequent day of the term, delivered:

A. J. WALKER, C. J.—As to the first point made in the petition for a rehearing, we have only to say, that the court must judicially take notice of such abbreviations as "*adm'r*," or acknowledge itself incompetent to understand the commonest writings.

After a careful consideration of the second point made, and the authorities adduced in support of it, we cannot find in it a reason for changing the conclusion which we have heretofore announced. The authorities cited by the counsel show, as we think, most clearly, that if the administration would, under the circumstances stated, be deemed *prima facie* an administration upon the estate of the senior Moseley, it may nevertheless be shown to have been in fact an administration on the estate of the junior Moseley.

Two specific objections were made to the plaintiff's testimony in the court below, one of which implied an admission that the administration was upon the estate of the junior Moseley; and the bill of exceptions states, that the court sustained the objections, and excluded the evidence. The objection to the evidence stated in the second point of the petition for a rehearing, was not one of the objections made in the court below, but is now brought forward for the first time. If that objection had not been excluded from the attention of the plaintiff's counsel, and of the court, by the other specific objections which were made, it might have been obviated. The court erred in sustaining the specific objections which were made; and we cannot affirm that it was error without injury, because there was another objection which might have been made, and which, if made, might have been obviated. It is our duty, therefore, to reverse, notwithstanding there may have been another objection, which might have been fatal to the admissibility of the evidence, but which was of such a nature that, if it had been made in the court below, it was capable of being obviated.

It must be admitted, that the exclusion of illegal evidence, for a wrong reason, would not be a reversible error. *Jordan v. Owen*, 27 Ala. 152. But it would be improper for the court to assume that the excluded evidence was illegal. Although it may have been, *prima facie*, illegal, yet, in connection with over evidence, it might have been made legal. We cannot presume that the other evidence which was necessary, in connection with that excluded, to make out the plaintiff's right to sue in the capacity of administrator, would not have been offered, when both the motion to exclude, and the order excluding, were expressly put upon other grounds than the want of such evidence, and one of those grounds implied an admission that the evidence was not obnoxious to the objection now made.

The petition for a rehearing is overruled.